# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                           Chapter 13

Elin F. Haddad,                                  Case No. 12-67595

      Debtor.                                Hon. Phillip J. Shefferly

_____/

**AMENDED OPINION GRANTING IN PART CHAPTER 13 TRUSTEE'S MOTION REGARDING ORDER DISMISSING CHAPTER 13 CASE**[1]

## Introduction

Elin Haddad ("Debtor") is the debtor in this Chapter 13 case. After she filed her Chapter 13 petition, but before confirmation of her plan, the Debtor was injured in an automobile accident. The Debtor did not list a claim against anyone arising from the accident in any schedules or other documents that she filed prior to confirmation of her plan. Nor did she tell the Chapter 13 Trustee about the accident. Several years later, before the Debtor's plan expired, an attorney – not the Debtor's bankruptcy attorney – contacted the Trustee and advised him that he represented the Debtor and that he had settled a claim for the Debtor arising from the accident, for a very large amount. In response, the Trustee filed a plan modification that proposed to distribute some of the settlement proceeds to the Debtor's creditors. The Debtor objected. A week before the scheduled hearing on the plan modification, the Debtor dismissed her case.

_____

[1] This Amended Opinion amends the opinion (ECF No. 158) entered by the Court on September 5, 2017, by adding footnotes 5 and 8 to address a claim of exemption made by the Debtor in her Chapter 13 bankruptcy case.

The Trustee now moves for reconsideration of the dismissal order. In the alternative, the Trustee requests that the dismissal order be amended to provide for a portion of the settlement proceeds to be distributed to the creditors in the Chapter 13 case. The Debtor opposes both forms of relief and argues that she is entitled to have her case dismissed and keep all of the settlement proceeds. For the reasons explained in this opinion, the Court denies the Trustee's request to vacate the dismissal order, but grants the Trustee's request to amend the dismissal order to provide for a portion of the settlement proceeds to be paid to the creditors in the Chapter 13 case.

### Jurisdiction

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O), over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a).

### Facts

The following facts are taken from the papers filed in this case and the statements made by the attorneys for the Debtor and the Trustee at two hearings held by the Court. None of these facts are in dispute.

The Debtor is a retired schoolteacher with income from a pension and social security. On December 21, 2012, the Debtor filed this Chapter 13 case. Her only significant asset was her home. The Debtor proposed a 36 month plan that allowed her to catch up the arrearage on the first mortgage on her home and strip the second mortgage on her home because there was no equity to support it. The plan provided for a minimum distribution of 4% to the holders of allowed unsecured

claims. The plan was accompanied by a worksheet with a liquidation analysis that showed that there would be no distribution to unsecured creditors in a Chapter 7 liquidation.[2]

On February 22, 2013, two months after filing Chapter 13, but before confirmation, the Debtor was involved in an accident in which she was seriously injured. The Debtor spoke with attorneys to try to find one to pursue a claim for her regarding the accident. When the Debtor testified at her first meeting of creditors on May 6, 2013, she did not mention the accident, a possible claim from the accident, or her efforts to hire an attorney. On August 2, 2013, the Court entered an order confirming the Debtor's plan.

For the next couple of years, the Debtor's case was uneventful, but the Debtor continued to look for an attorney to pursue a claim for her from the accident. On February 14, 2016, the Debtor retained an attorney to do so. The Debtor did not file anything with the Court regarding her hiring of an attorney, and she still did not disclose to her creditors, the Trustee or the Court that she had a claim from the accident.

On October 6, 2016, the Debtor filed a proposed plan modification. The plan modification explained that the Debtor needed to extend the length of her plan to account for certain payments that she had made directly on her first mortgage. The plan modification also stated that the Debtor needed to reduce the dividend to her unsecured creditors from a minimum of 4% to 0% because of periodic increases in the Debtor's mortgage payment and administrative expenses. The Debtor did not say anything in her plan modification about any claim that she had from the accident or about the attorney the Debtor had hired to pursue the claim. Nor did the Debtor file any amendments to

---

[2] E.D. Mich. LBR 3015-1(b)(1) requires a Chapter 13 debtor to attach to their plan a worksheet with a liquidation analysis to show what creditors would receive in a Chapter 7 case.

her schedules to list a claim. The plan modification was accompanied by a worksheet with a liquidation analysis that showed there would be no distribution to unsecured creditors in a Chapter 7 liquidation.[3] On November 1, 2016, the Court approved the Debtor's plan modification, with some changes requested by the Trustee. The dividend to be paid by the Debtor to her unsecured creditors was reduced to 0%.

On March 17, 2017, the Trustee filed a notice that the Debtor had completed her plan payments. Shortly after filing the notice, but before the time to object to the notice had expired, the Trustee received a letter, dated March 28, 2017, from Kitari Johnson ("Johnson"), who identified himself as an attorney for The Settlement Alliance. The letter stated that the Debtor had a claim ("Claim") from an accident on February 22, 2013, that she had retained an attorney on February 14, 2016 to represent her on the Claim and, most important, that the Claim had now been settled for $764,880.40 ("Settlement Proceeds"). The letter further explained that The Settlement Alliance is a "court appointed settlement fund administrator" that was holding the Settlement Proceeds. The letter asked the Trustee to let The Settlement Alliance know whether the Debtor's bankruptcy estate had any interest in the Settlement Proceeds.

After receiving Johnson's letter, on March 31, 2017, the Trustee withdrew the notice of completion of the Debtor's plan payments that he had previously filed with the Court. The Trustee then contacted the Debtor's bankruptcy attorney, who told the Trustee that he did not know anything about the Claim, the Debtor's retention of an attorney to prosecute the Claim, or the Settlement Proceeds. The Trustee asked the Debtor to remit to the Trustee a portion of the Settlement Proceeds

---

[3] E.D. Mich. LBR 3015-2(b)(1)(B) provides that a post-confirmation plan modification, just like an original Chapter 13 plan, must also comply with the requirement of LBR 3015-1(b) to attach a liquidation analysis showing what creditors would receive in a Chapter 7 liquidation.

sufficient to achieve a 100% dividend to unsecured creditors. The Trustee estimated at that time that this would require about $40,000.00 of the Settlement Proceeds, which would still leave the Debtor with well over $700,000.00 of the Settlement Proceeds for her to keep. The Debtor declined the Trustee's request.

That prompted the Trustee to file his own proposed plan modification on May 1, 2017. The Trustee's plan modification explained that the Trustee had learned that the Debtor had settled the Claim for "an amount in excess of $700,000.00," and proposed that the Debtor's plan be modified to increase the dividend to unsecured creditors from 0% to 100%. On May 23, 2017, the Debtor filed a bare bones response to the Trustee's plan modification that requested the Court to deny it. The Court issued a notice, setting a hearing on the Trustee's plan modification for June 6, 2017.

One week before the scheduled hearing, the Debtor filed a motion to dismiss her Chapter 13 case.[4] On the same day, the Court entered an order ("Dismissal Order") granting the Debtor's motion and dismissing the case.

On June 5, 2017, the Trustee filed a motion for reconsideration ("Motion") (ECF No. 137). The Motion asks the Court to reconsider and vacate the Dismissal Order so that the Trustee may proceed to have his proposed plan modification heard by the Court. In the alternative, if the Court does not vacate the Dismissal Order, the Motion seeks two other forms of relief. First, it requests the Court to permit the Trustee to distribute a portion of the Settlement Proceeds sufficient to pay a 100% dividend to the holders of allowed unsecured claims in the Debtor's Chapter 13 case.

---

[4] The Debtor actually filed a "Notice of Intent to Voluntarily Dismiss Chapter 13 Case," rather than a motion, as required by Fed. R. Bankr. P. 1017(f)(2), but because the Debtor used the event code in the Court's Electronic Case Filing system for a motion to dismiss, the Court treated it as a motion to dismiss.

-5-

Second, it requests the Court to bar the Debtor from filing any bankruptcy case in the future for a period of five years.

On June 14, 2017, the Debtor filed a notice of substitution of attorney, replacing the bankruptcy attorney who represented the Debtor since the commencement of the case with a new bankruptcy attorney. On the same day, the Debtor also filed an amendment to schedules A/B and C that listed the Claim for the first time. The amended schedule A/B described the Claim as "Vaughn et. al. v. General Motors LLC, City of St. Louis, State Of Missouri Cause No. 1622-CC00265," "Case Filed 2/19/16," having an unknown value. The Debtor's amended schedule C described the Claim the same way and exempted 100% of the Claim under § 522(d)(11)(D) of the Bankruptcy Code.[5]

On June 15, 2017, one day after amending her schedules, the Debtor filed a response to the Motion. The response argues that the Debtor has an absolute right to dismiss her Chapter 13 case and therefore the Motion must be denied. As for the Motion's request for alternative relief, the response argues that the Debtor has not engaged in any bad faith conduct, her failure to disclose the Claim did not prejudice her creditors because they will still be entitled to enforce their legal rights against the Debtor, and there is no legal authority for the alternative relief. On June 16, 2017, the Trustee filed a memorandum in support of the Motion.

On July 18, 2017, the Court held a hearing on the Motion. At the hearing, the Trustee stood by his argument that the Court should vacate the Dismissal Order and allow the Trustee's proposed plan modification to be heard, but changed his position regarding the alternative forms of relief

---

[5] Section 522(d)(11)(D) permits a debtor to exempt a payment, not to exceed $23,675.00 "on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss[.]"

requested in the Motion. First, the Trustee withdrew the Motion's request for a bar prohibiting the Debtor from filing another bankruptcy case in the future. Second, the Trustee argued that instead of vacating the Dismissal Order, a better remedy is for the Court to amend the Dismissal Order to provide for a portion of the Settlement Proceeds to be paid to the holders of allowed claims in the Debtor's Chapter 13 case. This would allow the Debtor to keep her dismissal, and keep most of the Settlement Proceeds for herself, but still pay the creditors who had been stayed from collecting their debts for over four years by the Debtor's Chapter 13 case Although this form of alternative relief was raised in the Motion, it was not the primary form of relief requested in the Motion. To address the Trustee's change in position at the hearing, the Debtor's attorney asked to file a supplemental brief. The Court granted that request and adjourned the hearing. On August 1, 2017, the Debtor filed her brief. The Court held the adjourned hearing on August 17, 2017. At the conclusion of the hearing, the Court took the Motion under advisement.

## Legal Standards

The Motion states that it seeks reconsideration of the Dismissal Order under Fed. R. Bankr. P. 9023 and E.D. Mich. LBR 9024-1. Based on the arguments made by the Debtor and the Trustee during the two hearings on the Motion, the Court also construes the Motion as requesting relief from the Dismissal Order under Fed. R. Bankr. P. 9024.

Fed. R. Bankr. P. 9023 governs requests for a new trial or to alter or amend a judgment. It incorporates Fed. R. Civ. P. 59. A motion for relief under Rule 9023 must be filed no later than 14 days after the judgment. The Sixth Circuit standard under Rule 59 for setting aside a judgment requires "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in

-7-

controlling law; or (4) a need to prevent manifest injustice." United States v. Ford Motor Co., 532 F.3d 496, 507 (6th Cir. 2008) (internal quotation marks and citation omitted).

E.D. Mich. LBR 9024-1(a)(3) states that for the moving party to prevail on a motion for reconsideration, they "must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof." Under E.D. Mich. LBR 9024-1(a)(1), a motion for reconsideration must be filed within 14 days after the entry of the order for which reconsideration is sought.

Fed. R. Bankr. P. 9024 incorporates Fed. R. Civ. P. 60. Rule 60(b) provides that a court, on motion and just terms, may relieve a party from an order for five specific reasons in Rule 60(b)(1)-(5), and in Rule 60(b)(6) for "any other reason that justifies relief." Although the Motion does not cite Rule 60(b), as noted earlier, the Court construes the substance of the Motion as requesting relief from the Dismissal Order either for misrepresentation, fraud or other misconduct by the Debtor under Rule 60(b)(3), or under Rule 60(b)(6) for "any other reason that justifies relief." A motion for relief under Rule 60(b) must be made within a reasonable time and, if it is brought under Rule 60(b)(3), it must be made no more than a year after entry of the order from which relief is sought.

In applying Rule 60(b)(3), the Sixth Circuit addressed the meaning of misrepresentation, fraud or other misconduct in Jordan v. Paccar, Inc., 97 F.3d 1452 (Table), 1996 WL 528951 (6th Cir. Sept. 17, 1996). The court described "misrepresentation" "as an affirmative misstatement," "fraud" as a "deliberate omission" and "other misconduct" as "questionable behavior affecting the fairness of litigation." Id. at *6 (citations omitted).

The Sixth Circuit "adheres to the view that courts should apply Rule 60(b)(6) only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." Hopper v. Euclid Manor Nursing Home, Inc., 867 F.2d 291, 294 (6th Cir. 1989) (citations omitted). Because "'almost every conceivable ground for relief is covered' under the other subsections of Rule 60(b)," courts require "something more." Rogan v. Countrywide Home Loans, Inc. (In re Brown), 413 B.R. 700, 705 (B.A.P. 6th Cir. 2009) (quoting Olle v. Henry & Wright Corp., 910 F.2d 357, 365 (6th Cir.1990)). That "something more" is limited to "unusual and extreme situations where principles of equity mandate relief[,] coupled with a showing that if relief is not granted[,] extreme and undue hardship will result." Rogan v. Countrywide, 413 B.R. at 705 (citations omitted).

The Dismissal Order was entered on May 30, 2017, and the Motion was filed on June 5, 2017. Whether construed under Fed. R. Bankr. P. 9023, E.D. Mich. LBR 9024-1, or Fed. R. Bankr. P. 9024, the Motion was filed timely.

## Discussion

### Duty to disclose

The Trustee's Motion and the Debtor's response raise a number of legal issues that are relevant to both forms of relief sought by the Trustee. The first issue is whether the Debtor had a duty to disclose the Claim to her creditors, the Trustee and the Court.

It is black letter law that when an individual files a bankruptcy case, they have "an affirmative duty to disclose all of [their] assets to the bankruptcy court." Browning v. Levy, 283 F.3d 761, 775 (6th Cir. 2002). This disclosure is accomplished by the filing of schedules as required by § 521(a) of the Bankruptcy Code. Section 521(a)(1)(B)(i) requires a debtor to file a

schedule of all assets.  "It is well settled that causes of action are among the assets that must be disclosed on a debtor's schedules."  Johnson v. Lewis Cass Intermediate Sch. Dist. (In re Johnson), 345 B.R. 816, 822 (Bankr. W.D. Mich. 2006) (citation omitted).

The Sixth Circuit Court of Appeals has held that a debtor's duty to disclose all assets is ongoing throughout a debtor's bankruptcy case.  In Kimberlin v. Dollar Gen. Corp., No. 12-3584, 520 Fed. Appx. 312, 2013 WL 1136563 (6th Cir. Mar. 20, 2013), the debtor was fired from her job 41 days before the last payment was due under her confirmed Chapter 13 plan.  Even though the debtor's potential claim from the firing arose close to plan expiration, the Sixth Circuit found that the debtor had a duty to disclose it, recognizing "the importance of the bankruptcy debtor's affirmative and ongoing duty to disclose assets, including unliquidated litigation interests" Id. at 314 (relying in part on White v. Wyndham Vacation Ownership, Inc., 617 F.3d. 472, 479 n.5 (6th Cir. 2010)).  "Had [the debtor] notified the court of her potential claim within the 41-day period, it could have modified her plan to grant creditors some percentage of any future recovery." Id. at 315.  See also Currithers v. FedEx Ground Package Sys., Inc., No. 04-10055, 2012 WL 380146, at *4 (E.D. Mich. Feb. 6, 2012) ("'The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change.'") (quoting Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1286 (11th Cir. 2002), and citing § 521(a) and § 541(a)(7)).

Question no. 21 on the schedule B that the Debtor filed on December 27, 2012 required the Debtor to disclose whether she had any "Other contingent and unliquidated claims of every

-10-

nature . . . ."[6] The accident that gave rise to the Claim occurred on February 22, 2013. Even though the Debtor did not know at that time whether she would ultimately recover anything on the Claim, she admits that she consulted with attorneys at that time in the hope of retaining an attorney to represent her to pursue the Claim. The Debtor had an affirmative duty to amend schedule B at that time to disclose the Claim. Even though the Claim was unliquidated and of unknown value, it was a potential asset in the Debtor's bankruptcy case.

Not only did the Debtor fail to amend schedule B to list the Claim after the accident, she also failed to amend the liquidation analysis that she had filed with her plan. The purpose of the liquidation analysis is to enable a debtor's creditors, the trustee and the Court, at the time of confirmation, to ascertain whether a debtor's plan meets a necessary element of confirmation: the requirement in § 1325(a)(4) of the Bankruptcy Code that the value of the property to be distributed under the plan is not less than the amount that would be paid to creditors if the debtor's estate were liquidated under Chapter 7. The Debtor's liquidation analysis stated that the Debtor had no assets other than her residence, her vehicle and some other de minimis personal assets. That was misleading. The Debtor also had the Claim. Without the Debtor amending her liquidation analysis to disclose the Claim, the Debtor's creditors, the Trustee and the Court could not possibly have known at the confirmation hearing whether liquidation in Chapter 7 would have provided a larger distribution to the Debtor's creditors.

There were multiple times in this case when disclosure of the Claim was imperative. First was following the accident. Second was following the consultation with attorneys after the accident.

---

[6] On December 1, 2015, the new bankruptcy Official Forms combined schedules A and B into schedule A/B, but at the time the Debtor filed her bankruptcy case, and at the time of the Debtor's accident, the schedule that required her to list her assets was titled schedule B.

Third was at the first meeting of creditors. Fourth was at the confirmation hearing. Fifth was when the Debtor hired an attorney to represent her to pursue the Claim. That the Debtor failed to disclose the Claim on each of these occasions is bad enough, but what makes the Debtor's case especially troubling is that the Debtor later filed her own proposed plan modification with the Court that still said nothing about the Claim.

The Debtor filed her proposed plan modification on October 6, 2016, requesting a reduction in the dividend that she would pay to her unsecured creditors from a minimum of 4% to 0%. Apart from her existing, ongoing duty of disclosure that arose after the accident, the filing of the Debtor's plan modification triggered an additional, independent duty of disclosure. As the proponent of the plan modification, the Debtor was required to file a new worksheet – just like she did when she filed her original plan – that contained a liquidation analysis to show that her proposed plan modification provided a higher distribution to her creditors than a Chapter 7 liquidation because the "best interests of creditors" test of § 1325(a)(4) is made applicable by § 1329(b) of the Bankruptcy Code to all post-confirmation plan modifications. Although it is not clear from the record exactly when the Claim was settled, there is no question that by the time the Debtor filed the liquidation analysis worksheet with her plan modification, it had already been seven months since the Debtor had filed a lawsuit to recover on the Claim. But the Debtor failed to include the Claim on the worksheet.

Had the creditors and the Trustee known of the Claim at the time the Debtor filed her proposed plan modification, they could have asked the Court to take the Claim into consideration and deny the Debtor's plan modification because the Debtor had no need to reduce to 0% the payment to her unsecured creditors. Further, they could have proposed their own plan modification to have a portion of the Claim proceeds paid to the Debtor's plan, or they could have moved to

-12-

convert the case to Chapter 7. As explained by the Sixth Circuit in <u>Kimberlin</u>, when a debtor fails to comply with their duty to disclose the existence of a claim, it prevents the creditors and the trustee from pursuing "options for protecting the estate's and the creditors' potential interest" in that claim. <u>Kimberlin</u>, 520 Fed. Appx. at 315 ("Because [the debtor] never amended her filings or otherwise disclosed the potential claim, she deprived the bankruptcy trustee, court, and creditors of any opportunity to consider possible options.").

The fact that the Debtor eventually amended her schedule A/B on June 15, 2017, to add the Claim does not mean that the Debtor fulfilled her ongoing duty of disclosure. The Debtor filed her amendment to add the Claim on schedule A/B after she dismissed her case – long after the accident, the hiring of an attorney, and the filing of the lawsuit, and even then only after the Trustee learned about the Claim from Johnson's March 28, 2017 letter. It took the Trustee filing a proposed plan modification to distribute some of the Settlement Proceeds to get the Debtor to finally disclose the Claim. The Debtor's reactive amendment at that late date falls far short of fulfilling her ongoing duty. <u>See</u> <u>White v. Wyndham Vacation Ownership, Inc.</u>, 617 F.3d 472, 481 (6th Cir. 2010) ("We will not consider favorably the fact that [the debtor] updated her initial filings after the motion to dismiss was filed. To do so would encourage gamesmanship, since [the debtor] only fixed her filings after the opposing party pointed out that those filings were inaccurate.").

The Debtor argues that she did not list the Claim until after the Trustee filed his proposed plan modification because she did not know that she had a duty to do so. In making this argument, the Debtor alleges that she relied on the advice of her prior bankruptcy attorney who did not advise her that she had a duty to disclose the Claim. The Court need not take evidence to ascertain whether this is true. Even if true, this allegation at most may help to explain why the Debtor breached her

-13-

duty of disclosure. But this allegation, even if true, has no relevance to the legal issue of whether the Debtor had an ongoing affirmative duty of disclosure.

The Court holds that the Debtor had an affirmative ongoing duty to disclose the Claim once the accident occurred. Even after the Debtor failed to disclose it at that time, she had an affirmative duty to disclose it at the first meeting of creditors, at the confirmation hearing, when she hired an attorney to represent her to pursue the Claim, when she filed her own proposed plan modification, and again when she settled the Claim for the Settlement Proceeds. The Debtor violated her ongoing duty of disclosure on each of these occasions and throughout this case.

<u>Property of the estate</u>

A second issue raised by the Motion and the Debtor's response concerns whether the Settlement Proceeds – regardless of whether they were disclosed – are property of the Debtor's Chapter 13 bankruptcy estate. In the response that he filed to the Trustee's proposed plan modification, the Debtor's first bankruptcy attorney took the position that the Settlement Proceeds are not property of the estate. However, the Debtor's current bankruptcy attorney concedes that the Settlement Proceeds are property of the bankruptcy estate. Despite that concession, it is worth examining the Bankruptcy Code sections that pertain to this issue.

Section 541(a) of the Bankruptcy Code states that the filing of a bankruptcy case creates an estate that is comprised of all of the property described in § 541, "wherever located and by whomever held." Included in the description of property of an estate under § 541(a)(1) are "all legal or equitable interests of the debtor in property as of the commencement of the case."

When the Debtor filed her Chapter 13 petition on December 21, 2012, the Claim and the Settlement Proceeds were not property of the estate under § 541(a)(1) because they did not exist at

that time. The Debtor was not involved in the accident until February 22, 2013 – after she filed her bankruptcy petition. However, because the Debtor filed a Chapter 13 case, the Claim, and any proceeds of the Claim, later became property of the estate under § 1306(a)(1) of the Bankruptcy Code, which provides:

> (a) Property of the estate includes, in addition to the property specified in section 541 of this title–
>
> (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first[.]

Therefore, even though the Claim was not property of the bankruptcy estate when the Debtor filed her Chapter 13 case, it became property of the estate once the Debtor acquired the Claim by reason of the accident on February 22, 2013.

As noted, the Debtor now concedes this point, but the Debtor argues that even if the Claim is included in property of the estate under § 1306(a)(1), neither the Trustee nor the creditors in the Debtor's Chapter 13 case have any right to the Settlement Proceeds of the Claim because of § 1327(b) of the Bankruptcy Code, which governs the effect of confirmation and reads as follows: "Except as otherwise provided in the plan or in the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." According to the Debtor, § 1327(b) means that the Claim, and any proceeds recovered from it, vested in the Debtor when her plan was confirmed on August 2, 2013. As a result, the Debtor's creditors and the Trustee have no right to the Settlement Proceeds.

The flaw in the Debtor's argument is that it overlooks the fact that the Debtor had failed to schedule or otherwise disclose the Claim when she sought confirmation. Whatever else may be meant by § 1327(b)'s vesting language on confirmation, there is no controlling authority holding

that a Chapter 13 debtor can fail to disclose property of the estate prior to confirmation and yet be rewarded by having the undisclosed property "vest" in them on confirmation, free of the claims of their creditors. The Court declines the Debtor's invitation to construe § 1327(b) in a manner that would encourage debtors to conceal their property while in a Chapter 13 bankruptcy case.[7] The Court holds that the Claim is property of the bankruptcy estate under § 1306(a)(1), and that it did not vest in the Debtor under § 1327(b) upon confirmation of the Debtor's plan because of the Debtor's failure to disclose the Claim.

Debtor's right to dismiss

As noted earlier, the primary relief that the Motion seeks is to reconsider and vacate the Dismissal Order. The Court entered the Dismissal Order on the request of the Debtor under § 1307(b) of the Bankruptcy Code, which provides that, "[o]n request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter." The Debtor argues that there is no reason to reconsider and vacate the Dismissal Order because the straightforward language of § 1307(b) gives her an absolute right to dismiss her Chapter 13 case at any time. The Trustee counters that a debtor's right to dismiss under § 1307(b) is not absolute, but can be lost based on the debtor's conduct during the Chapter 13 case.

For support, the Trustee cites Jacobsen v. Moser (In re Jacobsen), 609 F.3d 647 (5th Cir. 2010). In Jacobsen, the Chapter 13 debtor was a licensed real estate broker who failed to list on his

---

[7] Section 554(c) of the Bankruptcy Code, which governs abandonment of property of the estate, works in a similar way. Section 554(c) provides that any property that is scheduled under § 521(a)(1) is abandoned to the debtor if it is not administered at the time the case is closed. But § 554(c) does not reward a debtor who conceals their property while in bankruptcy. Property *not* scheduled is not abandoned to the debtor and remains property of the estate. See In re Wright, 566 B.R. 457, 463 (B.A.P. 6th Cir. 2017) ("[I]f a debtor fails to schedule property, it is not abandoned upon closure of the case, but remains property of the estate.") (citations omitted).

-16-

schedules many property interests and pre-petition transfers. The properties and the transfers had substantial value. Id. at 650-51. When these facts were revealed, the Chapter 13 trustee filed a motion to convert the case to Chapter 7 for cause. The debtor responded to the motion to convert by filing a motion to dismiss the case under § 1307(b). Following an evidentiary hearing, the court made a finding that the debtor had acted in bad faith. The court granted the trustee's motion to convert the case to Chapter 7 and denied the debtor's subsequently filed motion to dismiss. The debtor appealed. Id. at 652.

The first issue addressed by the Fifth Circuit Court of Appeals in Jacobsen is whether there is an exception to a Chapter 13 debtor's right to dismiss under § 1307(b) for bad faith conduct or abuse of process. The court noted that this was an issue of first impression in that circuit, but that there is a split of cases in other circuits. Id. at 653-55 (comparing Nash v. Kester (In re Nash), 765 F.2d 1410 (9th Cir. 1985) ("suggest[ing] in dicta that the right to dismiss was absolute") and Barbieri v. RAJ Acquisition Corp. (In re Barbieri), 199 F.3d 616 (2d Cir. 1999) ("the first court of appeals to hold that no such exception [to the absolute right to dismiss] existed"), with Molitor v. Eidson (In re Molitor), 76 F.3d 218 (8th Cir. 1996) ("refus[ing] to allow the debtor to use § 1307(b) as an 'escape hatch' from the charges of bad faith")).

The Jacobsen court next discussed the Supreme Court's decision in Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365 (2007). Although Marrama did not involve a Chapter 13 debtor's request for dismissal under § 1307(a), it did address an analogous issue in the context of a Chapter 7 debtor requesting conversion of a case to Chapter 13 under § 706(a). In Marrama, the debtor made a number of misleading or inaccurate statements concerning his principal asset, a house in Maine, including omitting that he had transferred the property for no consideration, admittedly

-17-

to protect it from his creditors. He also listed the value as zero when it had substantial value. After the trustee stated his intent to administer the Maine property, the debtor filed a motion to convert to Chapter 13. Id. at 368-69. The trustee and the principal creditor objected based on bad faith. Agreeing, the bankruptcy court denied the debtor's request for conversion. Both the Bankruptcy Appellate Panel and the Court of Appeals for the First Circuit rejected the debtor's argument that he had an absolute right to convert from Chapter 7 to Chapter 13. Id. at 370. The Supreme Court affirmed, holding that the right to convert to Chapter 13 under § 706(a) is not absolute, and is not available to a debtor who has been shown to have acted in bad faith. Id. at 374.

The Jacobsen court followed the Supreme Court's reasoning in Marrama, and applied it to the facts of its case, holding that "a bankruptcy court has the discretion to grant a pending motion to convert [a Chapter 13 case to Chapter 7] for cause under § 1307(c) where the debtor has acted in bad faith or abused the bankruptcy process and requested dismissal under § 1307(b) in response to the motion to convert." 609 F.3d at 660.

In other words, Jacobsen rejected the notion that a Chapter 13 debtor has an absolute right to dismiss under § 1307(b).

> Proceeding from the propositions in Marrama that an apparently unqualified right is subject to an exception for bad faith and that bad faith justifies a bankruptcy court's exercise of its powers under § 105(a), we conclude that § 1307(b) is subject to a similar exception, at least when the debtor's request for dismissal is made in response to a motion to convert under § 1307(c). We therefore decline to read § 1307(c) as an "escape hatch" from which to escape a conversion motion filed under § 1307(c).

Id. at 661 (citation omitted). Jacobsen went on to explain that "[t]he [Supreme] Court's decision in Marrama was clear that bankruptcy courts are vested with authority to take appropriate action in response to an abuse of process." Id.

-18-

In his argument that the Debtor in this case did not have the absolute right to dismiss her case, the Trustee relies primarily on two facts. The first is the Debtor's continuous breach of her duty of disclosure. The Court has already found that the Debtor did have an ongoing affirmative duty of disclosure and that she continuously breached that duty throughout her case. The second is the timing of the Debtor's request to dismiss. The Debtor filed the request one week before the scheduled hearing on the Trustee's plan modification that proposed approximately $40,000.00 of the Settlement Proceeds be paid to the Debtor's creditors in her Chapter 13 case. The Court finds from the timing of the Debtor's request to dismiss that she made the request as an "escape hatch" to avoid the prospect of having the Court hear and possibly grant the Trustee's proposed plan modification.

Both of the facts the Trustee relies on are troubling. But they are not the only facts in the record. The following facts are also undisputed. The Debtor is a retired schoolteacher who lives off of a pension and social security. She suffered a serious personal injury as a result of the accident. Worse still, during her Chapter 13 case, at some point during 2016, the Debtor suffered an extraordinary tragedy when her son was killed. The Trustee does not challenge the Debtor's assertion that she has suffered significant personal hardships during her Chapter 13 case. The Trustee does not even challenge the Debtor's statements that she relied on her bankruptcy attorney's advice throughout the bankruptcy case and was unaware that she was required to disclose the Claim. During the two hearings on the Motion, the Trustee also conceded that there is no evidence that the Debtor's failure to disclose the Claim was the result of fraud on her part.

The Court did not hold an evidentiary hearing on the Motion because there were no material facts regarding the Debtor's conduct in genuine dispute. To be sure, the Debtor had an ongoing

-19-

affirmative duty throughout her Chapter 13 case to disclose the Claim. The Debtor failed that duty. And the Debtor pulled the plug on her Chapter 13 case before the Court could rule on the Trustee's proposed plan modification. But those two facts, standing alone, simply do not rise to the level of fraud or bad faith of the kind displayed by the debtors in the <u>Marrama</u> and <u>Jacobsen</u> decisions. The Court does not condone the Debtor's failure to comply with her ongoing affirmative duty of disclosure in this case. Nor does it approve of her decision to seek dismissal just before the hearing on the Trustee's proposed plan modification. But the Court need not rule on the legal issue of whether there is an exception for fraud or bad faith to what otherwise appears to be an absolute right to dismiss under § 1307(b), because the record in this case does not demonstrate that the Debtor engaged in the egregious type of fraudulent or bad faith conduct that was present in <u>Marrama</u> and <u>Jacobsen</u>.

The Debtor had the right to request dismissal of her Chapter 13 case under § 1307(b). The Court does not hold that there is no conduct that would ever support the Court recognizing an exception to a debtor's right to dismiss under § 1307(b), only that the Debtor's conduct in this case did not cause her to lose the right to dismiss under § 1307(b).

<u>Effect of dismissal</u>

Now that the Court has held that the Debtor had the right to request dismissal, the next issue concerns the effect of the dismissal on the Settlement Proceeds.

Section 349 of the Bankruptcy Code is titled "Effect of dismissal." Section 349(b)(3) provides that "[u]nless the court, for cause, orders otherwise, a dismissal of a case . . . revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case . . . ."

-20-

Although the Debtor argues that the Settlement Proceeds are not property of the estate because they revested in her under § 1327(b), the Court has already rejected that argument and held earlier in this opinion that the Settlement Proceeds are property of the bankruptcy estate. The Debtor next argues that even if the Settlement Proceeds are property of the estate, they must still revest in her under § 349(b)(3) upon dismissal. The Trustee responds that § 349(b)(3) does not give the Debtor any rights to the Settlement Proceeds because § 349(b)(3), by its terms, applies only to property that was vested in an entity *prior* to commencement of the bankruptcy case. According to the Trustee, because the Claim and the Settlement Proceeds only arose *after* the Debtor filed her bankruptcy case, they could not have been "vested immediately before the commencement of the case" in the Debtor. Therefore, the Trustee argues that the Court "should allow the Chapter 13 Trustee to administer those proceeds as property of the estate."

The Court is unaware of any controlling authority that directly addresses the question of whether § 349(b)(3) applies in the same manner both to property that becomes property of the bankruptcy estate on the petition date under § 541(a)(1) and to property that becomes property of the bankruptcy estate post-petition under § 1306(a)(1). However, there is ample authority regarding the purpose of § 349(b) that helps to inform the Court on this issue.

In Czyzewski v. Jevic Holding Corp., __ U.S. __, 137 S. Ct. 973 (2017), the United States Supreme Court recently discussed the application of § 349(b)(3) to a dismissed Chapter 11 case. The specific issue in Jevic was whether a bankruptcy court may authorize the distribution of settlement proceeds in a dismissed Chapter 11 case in a manner contrary to the Chapter 11 priority scheme. Although Jevic dealt with a Chapter 11 case, unlike the case before this Court, § 349 applies to dismissal of all bankruptcy cases, regardless of chapter. The Supreme Court explained

that the "basic purpose" of dismissal "'is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case.'" Id. at 984 (quoting H.R. Rep. No. 95-595, at 338 (1977)).

In re Bateson, 551 B.R. 807 (Bankr. E.D. Mich. 2016) discussed the purpose of § 349(b)(3) in the context of a dismissed Chapter 13 case:

> Section 349(b) "serves to undo the bankruptcy case to the extent possible–to put all parties in the position they were in before the case was filed." In re Hamilton, 493 B.R. 31, 38 (Bankr. M.D. Tenn. 2013) (citing S. Rep. No. 95-989, 49, reprinted in 1978 U.S.C.C.A.N. 5787, 5835). "[A]fter a bankruptcy case is dismissed, the debtor returns to the status he or she was in before the petition was filed." Bli v. Greenstone Farm Credit Services, FCLA (In re Bli Farms), 312 B.R. 606, 622 (E.D. Mich. 2004) (citations omitted).

Bateson, 551 B.R. at 813 (concluding "that any funds paid by a debtor to a Chapter 13 trustee that are still held by the trustee on dismissal must be returned to the debtor under § 349(b)(3)" absent cause to order otherwise).

The Court recognizes that the Claim and the Settlement Proceeds did not exist prior to the Debtor's Chapter 13 case, and in a technical sense cannot *re*vest in the debtor or any other entity because neither the debtor nor any other entity had an interest in them pre-petition. Nonetheless, the Court has no trouble concluding that § 349(b)(3) applies to all property of the estate, not just property that was in existence as of the date the Chapter 13 petition was filed. Fulfilling the "basic purpose" of § 349(b)(3), "to undo the bankruptcy case, as far as practicable," as described in Jevic, 137 S. Ct. at 984, requires return of *all* property of the estate – regardless of whether such property became property of the estate on the day the petition was filed under § 541(a)(1), or whether such property became property of the estate post-petition under § 1306(a)(1). Returning only pre-petition property to a debtor upon dismissal, but allowing a Chapter 13 trustee to continue to administer

-22-

post-petition property after dismissal, is contrary to and undermines the "basic purpose" of dismissal as described in <u>Jevic</u>.

The Court holds that even though the Claim and the Settlement Proceeds did not exist pre-petition, and only became property of the estate under § 1306(a)(1) after the petition was filed, § 349(b)(3) requires that the Claim and the Settlement Proceeds be returned to the Debtor, as the holder of the Claim, upon dismissal, subject only to whether there is cause to order otherwise under § 349(b)(3).

<u>Cause to distribute the Settlement Proceeds under § 349(b)(3)</u>

The Trustee argues that even if § 349(b)(3) does apply to post-petition property of the estate, such as the Claim and the Settlement Proceeds, the undisputed facts in this case support the Court finding cause to order otherwise under § 349(b)(3) and require the payment of a portion of the Settlement Proceeds to the Debtor's creditors in her Chapter 13 case. In response, the Debtor cites <u>Jevic</u> for the proposition that the cause standard under § 349(b)(3) is to be construed "narrowly." Here, because she did not engage in fraud or bad faith conduct, the Debtor argues that there are no facts in this case that support the Court finding cause to require any portion of the Settlement Proceeds to be paid to her creditors.

Earlier in this opinion, the Court explained that there are cases that have held that a debtor's right to dismiss a Chapter 13 case under § 1307(b) is not absolute and can be lost where there is a demonstration of fraud or bad faith. <u>See</u> <u>Jacobsen</u>, 609 F.3d at 660-62. The Court found that the facts relied on by the Trustee in seeking to set aside the Dismissal Order in this case do not support a finding of fraud or bad faith of the kind, or at the level, of the conduct found in those cases that have denied a Chapter 13 debtor's right to dismiss under § 1307(b). But § 349(b)(3) does not

-23-

require a finding of fraud, bad faith or abuse of process. It requires only a showing of "cause," a much different standard.

The Bankruptcy Code does not define cause. In <u>Jevic</u>, the bankruptcy court found cause in the "'dire circumstances' facing the estate and creditors." 137 S. Ct. at 982. With confirmation of a Chapter 11 plan unattainable, the bankruptcy court predicted that, without a structured dismissal that distributed proceeds to unsecured creditors, "there was 'no realistic prospect' of a meaningful distribution for anyone other than the secured creditors." <u>Id.</u> (citation omitted). The bankruptcy court held that the "cause to order otherwise" in that case was the need to provide a benefit to unsecured creditors who would otherwise have received no distribution, even if that benefit came at the expense, and over the objections, of priority creditors.

In rejecting the bankruptcy court's holding, the Supreme Court noted that the priority system of distribution to creditors was "a basic underpinning" of and "fundamental to the Bankruptcy Code's operation." <u>Id.</u> at 983-84. The Supreme Court found no cause to vary from the default revesting provision of § 349(b)(3) in a manner "that would be flatly impermissible in a Chapter 7 liquidation or a Chapter 11 plan because [it] violate[d] priority without the impaired creditors' consent." <u>Id.</u> at 985.

In this case, the Trustee is not asking the Court to allow him to distribute any of the Settlement Proceeds to the Debtor's creditors contrary to the priority scheme of distribution embodied in the Bankruptcy Code – as was the case in <u>Jevic</u>. Quite the opposite. The Trustee is asking that he be permitted to distribute the Settlement Proceeds in exactly the manner required by the priority scheme of distribution in Chapter 13. The Trustee requests authority to distribute the Settlement Proceeds to carry out the purpose of a bankruptcy case – to pay creditors in accordance

with the Bankruptcy Code – not to divert payments from creditors to end run the Bankruptcy Code, as occurred in <u>Jevic</u>.

The Debtor in this case wants to keep all of the Settlement Proceeds for herself and not pay any of them to her creditors. When the Trustee filed a proposed plan modification to take a portion of the Settlement Proceeds to pay the Debtor's unsecured creditors, the Debtor dismissed her case one week before the hearing for the Court to consider the Trustee's proposed modification. When asked by the Court why the Debtor would not agree to the Trustee's request that $40,000 be paid to the allowed unsecured claims in her Chapter 13 case, which would still allow her to have over $700,000 to keep for herself, the Debtor's reply was that she wanted to handle her creditors on her own. When pressed by the Court if that meant actually *paying* the holders of unsecured allowed claims in full, as the Trustee's plan modification proposed, the Debtor's answer was an unequivocal "no." She does not intend to pay them in full. Instead, the Debtor stated that she intends to negotiate discounts with those creditors who try to collect from her, and implied that she would be under no obligation to disclose the Settlement Proceeds when negotiating with those creditors. She even suggested that she may succeed in avoiding having to pay those creditors anything, perhaps never hearing from them at all given the passage of time since her Chapter 13 case was filed.

The Trustee does not allege that the Debtor has acted fraudulently or even in bad faith. But fraud or bad faith are not required to be shown to find cause under § 349(b)(3). Despite the absence of fraud or bad faith by the Debtor, this is precisely the type of case referred to by <u>Jevic</u> in its discussion of the proper time to use § 349(b)(3)'s authority to "order otherwise" for cause. The Debtor received the benefits of this Chapter 13 case but utterly failed to keep her end of the bargain. The Court sympathizes with the Debtor, who suffered some personal hardships during her

-25-

Chapter 13 case. But it is indisputable that this Chapter 13 case allowed the Debtor to enjoy the benefit of the automatic stay for 4½ years, keeping her unsecured creditors at bay. All the while, they were led to believe there were no assets to pay them. The unsecured creditors were even asked to reduce down to 0% the amount of their dividend in the Debtor's Chapter 13 case. The Debtor's unsecured creditors have lost 4½ years to collect their debts in reliance on the Debtor's Chapter 13 case. It is patently inequitable to allow the Debtor to keep all of the Settlement Proceeds – $764,880.40 – and now tell her unsecured creditors "tough luck." The Debtor's decision to dismiss her case on the eve of the hearing on the Trustee's proposed plan modification may not be fraud or bad faith, but it smacks of gamesmanship and the Court declines to reward it. These facts, taken together, constitute cause for the Court to require the payment of a portion of the Settlement Proceeds to the Debtor's creditors.[8]

### Conclusion

Whether construed as a motion for relief under Fed. R. Bankr. P. 9023, E.D. Mich. LBR 9024-1, or Fed. R. Bankr. P. 9024, the Court denies the Motion's request to vacate the Dismissal Order. The Debtor was entitled to dismiss her case under § 1307(b). There is no clear error of law, newly discovered evidence, intervening change in controlling law, or need to prevent a manifest injustice that warrants vacating the Dismissal Order under Fed. R. Bankr. P. 9023, nor

---

[8] The total amount of the Settlement Proceeds is $764,880.40. Although the Debtor purported to exempt 100% of the Claim in her amended Schedule C that she filed after this case was dismissed, she claimed her exemption under § 522(d)(11)(D). The maximum amount that can be claimed as exempt under § 522(d)(11)(D) is $23,675.00. Therefore, the Court's finding of cause to order a portion of the Settlement Proceeds to be paid to the Debtor's creditors does not impair the Debtor's exemption under § 522(d)(11)(D) as there are more than enough non-exempt Settlement Proceeds out of which the payment of the Debtor's creditors – consisting of approximately $40,000.00 – can be made.

-26-

is there any palpable defect that warrants vacating the Dismissal Order under LBR 9024-1. Further, the facts in this case do not demonstrate sufficient fraud, misconduct or other reason to *vacate* the Dismissal Order under Rule 60(b)(3). However, the Court finds that the facts in this case do warrant some relief to *modify* the Dismissal Order under Rule 60(b)(3) and (6).

The extent of a court's authority to modify an order, as opposed to vacating it, was discussed in a recent unpublished opinion by the Sixth Circuit. In <u>Kohut v. United Healthcare Ins. Co.</u>, (<u>In re LSC Liquidation, Inc.</u>) No. 16-2324, 2017 WL 3034271 (6th Cir. July 19, 2017), a liquidating trustee argued that "relief under Rule 60(b) is binary: a court can either vacate an order or it can leave the order in place." <u>Id.</u> at *4. In ruling against the trustee, the court noted that the word "vacate" does not appear in the rule. Instead, the rule "'gives the district court a grand reservoir [of] equitable power to do justice in a particular case.' Consequently, 'the rule should be liberally construed when substantial justice will thus be served.'" <u>Id.</u> (quoting <u>Radack v. Norwegian Am. Line Agency, Inc.</u>, 318 F.2d 538, 542 (2d Cir. 1963) (internal quotation marks and citation omitted)). Accordingly, the Sixth Circuit concluded that "modifying an order can be an appropriate form of relief under Rule 60(b)," so long as the motion is timely. <u>Id.</u>

The Debtor's failure to meet her ongoing duty of disclosure affected the fairness of her entire Chapter 13 case. The Debtor deprived the Trustee and creditors of the opportunity to accurately assess the Debtor's financial affairs and respond in an informed way to her Chapter 13 plan and her plan modification. In these circumstances, where the Debtor has no firm plans to use the Settlement Proceeds to pay her unsecured creditors outside of bankruptcy, despite having stayed them for 4½ years, substantial justice will best be served by the Court using its equitable power to grant the

-27-

Motion's request to amend the Dismissal Order under both Rule 60(b)(3) and 60(b)(6) to order the payment of the Debtor's unsecured creditors out of the Settlement Proceeds.

The Court will enter a separate order, consistent with this Opinion, that amends the Dismissal Order to require payment of a portion of the Settlement Proceeds sufficient to pay the holders of allowed unsecured claims in this case together with any unpaid administrative expenses.

**Signed on September 06, 2017**

/s/ **Phillip J. Shefferly**

**Phillip J. Shefferly**
**United States Bankruptcy Judge**